UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY BANASZAK,

        Plaintiff,                      Case No. 13-cv-13710

v                                        Honorable Thomas L. Ludington

CITIMORTGAGE, INC., et al.,

        Defendants.

_____/

**ORDER SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF'S OBJECTIONS, ADOPTING IN PART AND REJECTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

Plaintiff Anthony Banaszak initiated this case against Defendant CitiMortgage, alleging that it had violated several provisions of the Servicemembers Civil Relief Act, 50 U.S.C. §§ *et seq.* ("SCRA") and had engaged in common-law fraud. The allegations relate to CitiMortgage's management of his residential mortgage loan while he was on active duty status.

On November 1, 2013, CitiMortgage filed a motion to dismiss Banaszak's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion was referred to United States Magistrate Judge Charles Binder, who issued a report recommending that CitiMortgage's motion be granted and that Banaszak's complaint be dismissed. Banaszak timely filed objections to the Magistrate Judge's recommendation.[1]

Upon review of the parties' filings, CitiMortgage's motion to dismiss will be granted in part and denied in part. Banaszak's claims for violation of SCRA §§ 561 and 518 and for

---

[1] The report and recommendation also addressed the merits of Banaszak's motion to dismiss Defendant Chase Bank's counterclaim, ECF No. 33. However, after the recommendation was filed, the parties agreed to withdraw Banaszak's motion to dismiss and dismiss the complaint against Defendant Chase with prejudice. *See* ECF No. 53. Accordingly, the parts of the recommendation addressing Banaszak's motion to dismiss will be rejected as moot.

common law fraud will be dismissed pursuant to Rule 12(b)(6). However, because Banaszak has adequately pleaded a claim for violations § 527 and § 591 of the SCRA, those claims will not be dismissed.

**I**

Anthony Banaszak is a captain in the United States Armed Services. On November 11, 2003, Banaszak executed a mortgage securing property located at 1031 South Lincoln Street, Bay City, Michigan.[2] Compl. ¶ 4. The promissory note reflected a 30-year loan with a fixed rate of interest at 6.875%. Compl. Ex. 1.

In September 2004, Banaszak was ordered to active duty from September 2004 through March 31, 2006, and Banaszak explains that active duty "materially affected" his ability to pay his mortgage. Compl. ¶ 5-7, Ex. 4. Because Banaszak was unable to comply with the terms of his mortgage, Citibank prepared a Loan Modification Agreement in which Banaszak acknowledged that he had not paid certain interests, costs, and expenses as required by his mortgage agreement. Specifically, the 2006 Loan Modification Agreement noted that accrued interest, costs, and expenses in the amount of $27,219.82 had not been paid and would therefore be added to Banaszak's principal balance. The 2006 Loan Modification further stated that the annual interest rate would remain at 6.875%. *Id*.

In September 2007, Banaszak was once again called for active duty, and he remained on active duty until March 5, 2013. Compl. ¶¶ 11-12, 16, 20-22, 24. Basnaszak claims that this period of active duty "materially affected" his ability to comply with his mortgage obligations. Therefore, while he was on active duty in 2008, he once again entered into a Loan Modification Agreement with CitiMortgage in which he acknowledged that certain interest, costs, and

---

[2] Union Federal Bank of Indianapolis issued the mortgage and subsequently assigned it to CitiMortgage. Compl. ¶ 44.

expenses had not been paid in accordance with the mortgage terms. Compl. ¶ 26. According to the 2008 Loan Modification Agreement, those accrued costs would be added to the principal balance, resulting in a new unpaid principal balance of $215,364.03. The September 2008 Loan Modification again confirmed that the annual interest rate was 6.875%. *Id.*

About one month later, in October 2008, CitiMortgage sent Banaszak a letter confirming that his interest rate had been lowered so as to comply with SCRA: "According to your previous notification and in accordance with the [SCRA], CitiMortgage, Inc. (CMI) adjusted the effective interest rate on your mortgage loan to 6.000%." Compl. Ex. 8 at 8. The letter further noted that his interest rate would revert back to 6.785% on October 1, 2008, given that "Banaszak has been released from active duty as of 09/01/07." *Id.*

When Banaszak returned from active duty in 2013, he discovered that the Bay County Treasurer had posted a foreclosure notice on his property for non-payment of property taxes. Compl. ¶ 30. As a result, Banaszak filed this lawsuit seeking damages and an injunction prohibiting the foreclosure.

## II

The Servicemembers Civil Relief Act was passed "to enable [servicemembers] to devote their entire energy to the defense needs of the Nation." 50 U.S.C. App. § 502(1). It accomplishes this purpose by imposing limitations on judicial proceedings that could take place while a member of the armed forces is on active duty, including loans, contract enforcement, and other civil actions. 50 U.S.C. App. § 501 *et seq*. These limitations are "always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *Boone v. Lightner*, 319 U.S. 561, 575 (1943).

This case involves four provisions of the SCRA dealing with the administration and collection of private debts. Those provisions are summarized as follows:

- § 527 provides that obligations incurred by the servicemember before entering military service may not bear an interest rate greater than 6% during the period of military service and, in some cases, for a year after discharge from the military. Any interest charged over the 6% interest rate must be forgiven.

- § 591 permits a servicemember to apply for relief from collection of debts.

- § 518(3) provides that servicemember's claim for SCRA protection "shall not itself (without regard to other considerations)" provide the basis for an adverse credit report on the servicemember.

- § 561 provides that a servicemember's real estate cannot be foreclosed on for the purpose of collecting tax or other assessments.

In addition to his claims under the SCRA, Banaszak also claims that CitiMortgage committed common-law fraud by violating the SCRA with respect to the promissory note and subsequent loan modifications.

In his report, the Magistrate Judge recommended that each of Banaszak's claims against CitiMortgage be dismissed for failure to state a claim pursuant to Rule 12(b)(6). Banaszak objected to this recommendation, and further asserted that the Magistrate Judge "[did] not construe Plaintiff's Complaint in a light most favorable to the Plaintiff, [did] not accept all of the factual allegations as true or that Plaintiff can prove a set of facts in support of his claims[sic], thus entitling him to relief." Obj. at 2, ECF No. 44. Therefore, this Court will review each of Banaszak's claims de novo.

**A**

Banaszak first objects to the Magistrate Judge's finding that he had failed to state a claim pursuant to 50 App. U.S.C. § 527, which prohibits charging a servicemember on active duty an interest rate higher than 6.000%. Obj. 5. With respect to mortgages, the rate ceiling applies

"during the period of military service and one year thereafter." *Id.* at § 527(a)(1)(A). Any interest charged in excess of this statutory ceiling is forgiven. *Id.* at § 527(a)(2). Once the servicemember provides written notice and a copy of the orders calling the servicemember into active duty to the creditor, the interest rate ceiling applies retroactively and is "effective as of the date on which the servicemember is called to military service." *Id.* at § 527(b)(2).

The Magistrate's Judge found that Banaszak had never actually paid more than a 6% interest rate; this finding was based on an October 8, 2008 letter from CitiMortgage to Banaszak, in which CitiMortgage acknowledged that his monthly interest rate had been retroactively adjusted to 6.00%. Compl., Ex. 7 at 9. The letter further acknowledged that Banaszak had been released from active duty in September 2007, and therefore his interest rate would rise back to 6.875% in October 2008. The Magistrate Judge relied on this letter in concluding that "Plaintiff's complaint acknowledges that, once notified of active duty status, Defendant CitiMortgage retroactively adjusted the interest rate and paid subsidies to meet that end." Rep. & Rec. at 13, ECF No. 43. Based on this letter, the Magistrate Judge concluded that Banaszak had not actually ever paid more than 6.00% in interest. Therefore, the Magistrate Judge recommended that Banaszak's claim for violation of § 527 be dismissed for failure to state a claim.

Banaszak claims that the Magistrate Judge erred in two ways: First, he claims that the SCRA is violated when a servicemember *incurs*, i.e., is charged, an interest rate higher than 6.000%, even if he is never actually pays more than the 6.000% rate. This interpretation has been rejected by every court to consider the issue; they are unanimous in holding that if a servicemember never actually pays more than the 6.000% interest rate, then there is no § 527 claim. *See, e.g.*, *Newton v. Bank of McKenny*, 2012 WL 1752407, at *9 (E.D. Va. May 16, 2012)

(rejecting plaintiffs' SCRA claim related to interest in excess of the 6% rate cap because "the plaintiffs never paid any overcharges"); *Frazier v. HSBC Mortgage Servs.*, 401 F. App'x 436, 439 (11th Cir. 2010) (affirming summary judgment for defendant where, despite the fact that plaintiff's account statements included two different annual percentage rates, plaintiff admitted that "since she was called to active duty, she has never actually paid HSBC more than 6% interest on her loan, even for the few months when she was allegedly charged interest rates in excess of 6%); *Koenig v. Waukesha State Bank*, 2006 WL 2334841, at *4 (E.D. Wis. Aug. 10, 2006) (rejecting plaintiff's SCRA claim under § 527 because plaintiff never actually paid more than 6% interest). Therefore, this objection is unavailing.

Second, Banasazk alleges that he did pay more than the 6.000% cap because he paid late fees and costs based on the higher interest rate. In other words, because CitiMortgage improperly charged him interest at a too-high rate, he was unable to make payments and was forced to pay late fees and other charges. As implied in *Newton*, this type of claim for damages is sufficient to allege a violation of § 527: "Ordinarily the appropriate remedy [for allegations of overcharging] would be damages in the amount of the overcharge." 2012 WL 1752407, at *9 (E.D. Va. May 16, 2012). Thus, Banaszak has adequately pleaded damages associated with the alleged violation of § 527.

CitiMortgage, however, contends that Banaszak's own exhibits illustrate that he was never actually required to pay any costs associated with the higher interest rate. CitiMortgage emphasizes the October 2008 letter from its Loan Department in which it acknowledges that it "adjusted the effective interest rate on [Banaszak's] mortgage loan to 6.000%. As a result, [Banaszak has] been receiving a monthly subsidy of $131.35." Compl. ¶ 8, at 9.

Although the October 2008 letter provides some evidence that CitiMortgage retroactively adjusted Banaszak's interest rate, it is not evidence that CitiMortgage continued to do so during Banaszack's later military tours. Indeed, the fact that CitiMortgage adjusted his 2004-2006 interest rates does not automatically support the conclusion that it properly adjusted his 2009-2013 interest rates. Indeed, Banaszack's complaint, though somewhat inartfully pleaded, does not limit the supposed violations of § 527 to the years prior to 2008:

> Defendant, CitiMortgage, by failing and refusing to lower the interest rate on the Mortgage to nor[sic] more than six percent (6%) per annum interest from the date of the notification of mobilization to active military duty of Plaintiff Banaszak and continuing to a point in time that is one year after the release from active duty of Plaintiff Banaszak, has violated and continues to violate 50 U.S.C. App. § 527 and has caused and continues to cause damages to Plaintiff Banaszak.

Compl. ¶ 50. Thus, Banaszak's allegations span the time from when he first went on active duty in 2004 until the time he brought the lawsuit.

Because Banaszak's allegations span from 2004 and on, the fact that CitiMortgage may have retroactively adjusted his interest rate in 2008 does not necessarily prove that the interest rate from 2008 onward was proper. Indeed, the October 2008 letter provides that Banazack's interest rate will return to 6.875% beginning that same month: "According to our records, Anthony J Banaszak has been released from active duty as of 09/01/07. Therefore, your subsidy will be terminated effective with your 10/01/08 payment." Compl. Ex. 8 at 9.

Nor does the letter indicate that CitiMortgage reversed any overcharges as a result of that improper rate. Of course, after discovery, it may indeed be the case that Banaszak never paid an interest rate higher than 6.00%. However, Banaszak has sufficiently alleged a violation of 28 U.S.C. App. § 527. Therefore, because the Magistrate Judge relied on a 2008 letter to conclude that Banaszak never paid more than 6.00% interest in 2009, 2010, 2011, 2012, or 2013, Banaszak's objection will be sustained.

Banaszak has adequately pleaded a claim for damages related to overcharging and overpayment, but he will not be able to recover damages for emotional distress. Although Banaszak is alleging a violation of the SCRA, the SCRA merely amends the contract between the parties: "[T]he provisions of the SSCRA provide for an effective amendment of contractual provisions regarding interest rates during the period when a serviceman is in the service on active duty." *Newton*, 2012 WL 1752407, at *8 (citing *Cathey v. First Republic Bank*, 2001 WL 36260354, at *6 (W.D. La. July 6, 2001). Thus, Banaszak can only recover damages pursuant to his § 527 claim if he could recover those damages in a breach of contract claim.

In Michigan, the general rule is that damages for emotional distress cannot be recovered in an action for breach of contract. *See Kewin v. Mass. Mut. Life Ins. Co.*, 295 N.W.2d 50, 53 (Mich. 1980). In addition, the more appropriate remedy would be damages in the amount of the overcharge. *Newton*, 2012 WL 1752407, at *9. Because Banaszak cannot recover damages related to his emotional distress pursuant to § 527, this part of his complaint will be dismissed. However, he has otherwise adequately pleaded a claim for overcharge-related damages pursuant to § 527, and therefore his objection will be sustained.

**B**

Banaszak next objects to the Magistrate Judge's determination that his request for injunctive relief pursuant to 28 U.S.C. App. § 591 is not ripe. Section 591 provides that "[a] servicemember may, during military service or within 180 days of termination of or release from military service, apply to a court for" injunctive relief. By the plain terms of the statute, Banaszak had only 180 days after his military service ended in which to apply for injunctive relief. *See Rodriguez v. American Express*, 2006 WL 908613, at *8 (E.D. Cal. Apr. 7, 2006).

The Magistrate Judge noted that Banaszak had not filed a motion for stay pursuant to § 591 at the time he decided CitiMortgage's motion to dismiss on April 10, 2014. And the Magistrate Judge further concluded that any subsequent request for relief would be untimely under the statute.

Banaszak contends that his request for injunctive relief is "ripe" because the Complaint should be construed as a motion for relief pursuant to § 591—an about-face from his earlier argument. In his response to Defendants' motion to dismiss, he concedes that he did not file a motion for a stay and, by implication, that a motion for a stay is distinct from a complaint: "Captain Banaszak did not feel a Motion [for stay] was appropriate at the time he filed his Complaint." Resp. at 10, ECF No. 32. Indeed, the Magistrate Judge expressly relied on this concession in his recommendation: "I suggest that since Plaintiff has conceded that he has not filed a motion for stay . . . that this claim is unripe and should be dismissed." Rep. & Rec. 17.

Having received the Magistrate Judge's recommendation, Banaszak now attempts to argue the opposite: that for purposes of § 591, his Complaint should be treated as a motion for stay. In support of his claim, Banaszak relies on the holding in *Santana-Archivald v. Banco Popular De Puerto Rico*, 2012 WL 2359432 (D.P.R. June 19, 2012).

In *Santana-Archivald*, the plaintiff filed a complaint alleging several violations of the SCRA and requested anticipatory relief pursuant to § 519. The *Santana-Archivald* court did not dismiss any allegations in the plaintiff's complaint, which included a request for injunctive relief pursuant to § 519. The *Santana-Archivald* court concluded that, because the plaintiff had adequately alleged violations of § 527 of the SCRA, she had also adequately requested relief pursuant to § 591: "The SCRA requires similar pleadings, which the complaint satisfies, to engage the anticipatory relief provision. *See* 50 U.S.C. app. § 591." *Id.* at *2. Banaszak thus

contends that this Court should do the same—decline to dismiss the § 519 claim in the complaint because he has also adequately alleged violations of the SCRA.

CitiMortgage, however, contends that this Court should follow *Rodriguez v. American Express*, 2006 WL 908613, at *8 (E.D. Cal. Apr. 7, 2006). In *Rodriguez*, a plaintiff filed a complaint for relief pursuant to the SCRA. Although the complaint was filed within the time period prescribed by § 591, the plaintiff did not file a separate motion for a stay pursuant to § 591. *Id.* The district court concluded that: (1) a stay pursuant to § 591 is not self-executing; and (2) a complaint will not be construed as a motion: "Plaintiff had the burden to file and serve a separate motion for stay and failed to do so." *Id.* The *Rodriguez* court therefore dismissed the plaintiff's claim for relief pursuant to § 591. *Id.*

Each party thus relies on different district court decisions that reached diametric conclusions: *Santana-Archivald* provides that a complaint is sufficient to invoke relief pursuant to § 591, while *Rodriguez* requires a plaintiff to file a separate motion requesting relief pursuant to § 591. Both cases, *Santana-Archivald* and *Rodriguez*, are persuasive authority for this Court. But in light of the prescription in *Boone* that the SCRA "must be liberally construed" to protect servicemen, *Santana-Archivald* presents the better interpretation of § 591.

Indeed, nothing in the plain language of § 591 requires a plaintiff to file a separate motion for relief:

(a) Application for relief

A servicemember may, during military service or within 180 days of termination of or release from military service, *apply to a court for relief* . . . .

50 App. U.S.C. § 591. Section 591 thus does not require a servicemember to apply for relief in any particular way. Thus, as in *Santana-Archivald*, Banaszak can apply for relief by filing a complaint.

As in *Santana-Archivald*, Banaszak has adequately pleaded a claim pursuant to 50 App. U.S.C. § 527, and therefore he has also adequately pleaded a claim for relief pursuant to § 591. And because the Complaint was filed within the time period ascribed by § 591,[3] Banaszak has adequately stated a claim for relief, and his objection will be sustained.

**C**

Banaszak next objects to the Magistrate Judge's determination that his request for damages pursuant to 50 U.S.C. App. § 561 failed to state a claim. Section 561 prohibits the sale of real property to enforce the collection of a tax or other assessment. Moreover, if the real property has been sold, a servicemember has the right to redeem or commence an action to redeem the servicemember's property. However, § 561 makes clear that it applies only to real property that is sold for the purpose of "enforce[ing] the collection of a tax or assessment. 50 App. U.S.C. § 561; *see also Jimenez v. Miami-Dade County*, 2013 WL 214673, at *4 (S.D. Fla. Jan. 18, 2013).

The Magistrate Judge concluded that, because no sale to enforce collection of a tax assessment has occurred, § 561 had not been violated: "I suggest that according to the plain language of the statute, since no sale to enforce collection of a tax assessment occurred, nor is one pending, § 561 has not been violated." Rep. & Rec. 15.

Banaszak objects to this conclusion, claiming that, although the improper foreclosure sale was never completed, the mere fact that a foreclosure action was initiated is sufficient to state a claim pursuant to § 561.

---

[3] As noted, the Magistrate Judge's recommendation was based on the fact that Banaszak conceded that he had not yet filed a motion for stay, separate and apart from his complaint. After the Magistrate Judge issued the recommendation, Banaszak filed a motion for stay pursuant § 591, which was rejected because it fell outside the statutory time period. However, because the Complaint will be construed as an application for a stay, and because the parties concede that the Complaint was filed within the statutory time period, the Magistrate Judge's denial of Banaszak's motion for stay is moot.

Although the parties focus on whether a foreclosure sale was completed, the dispositive issue is whether the attempted foreclosure was pursuant to the "enforce[ment of] the collection of a tax or assessment. 50 App. U.S.C. § 561. Here, Banaszak did not allege in his complaint that *CitiMortgage*[4] had sold his property for the purpose of enforcing the collection of a tax or assessment. Instead, Banasazk alleged that:

> Defendant CitiMortgage, by failing and refusing to abide by the mortgage contract with Plaintiff Banaszak continuing until a period of up to 180 days after the termination of, or release from active military duty, has violated and continues to violate the provisions of 50 U.S.C. App. § 561.

Compl. ¶ 72. Thus, Banaszak's allegation is that CitiMortgage breached the promissory note and is attempting to sell the property because of that breach. There is no mention of a failure to pay taxes or a sale to enforce a tax assessment.

To the extent that Banaszak contends that CitiMortgage had an obligation to pay the taxes on the real property, this contention is directly contradicted by the mortgage documents. The Mortgage provides that Banaszak is responsible for any taxes that arise in connection with his property:

> **Charges to Borrower and Protection of Lender's Rights in the Property**
>
> Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. . . . If Borrower fails to make these payments or the payments required by paragraph 2,[5] or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may signficiantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the

---

[4] In contrast, paragraph 30 of the Complaint notes that "Bay County Treasurer posted a foreclosure notice on Plaintiff Banaszak's residence for non-payment of property taxes." Curiously, however, Banaszak did not bring a § 561 claim against the Bay County Treasurer.

[5] Paragraph 2 of the Security Instrument provides that "Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property . . . ." Compl. Ex. 2 at 5. Paragraph 2 thus confirms that it is Banaszak's, not CitiMortgage's, obligation to pay taxes arising from the real property.

value of the Property and Lender's rights in the Property, including payment of taxes . . . .

Compl. Ex. 2 at 7. Thus, CitiMortgage had the right to pay taxes on the property, but not the obligation to do so. Moreover, both the 2006 and the 2008 Loan Modifications provide that "[t]he Borrower also will comply with all the other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements *to make all the payments of taxes . . . .*" Compl. Ex. 5 at 6; Ex. 8 at 3. Thus, by the express terms of all the mortgage documents, Banaszak is responsible for any tax assessments.[6]

Section § 561 only prohibits foreclosures that were taken for the purpose of enforcing a tax assessment. Banaszak has not pleaded that Citimortgage foreclosed or attempted to foreclose on the property to enforce a tax assessment. Rather, by the plain terms of the complaint, it is the Bay County Treasurer who initiated the foreclosure proceeding to enforce its tax assessment. Therefore, Banaszak's objections will be overruled and this claim will be dismissed.

**D**

Banaszak next objects to the Magistrate Judge's conclusion that he has not stated a claim for relief under 50 App. U.S.C. § 518. Section 518 prohibits a creditor from using the fact that a servicemember-debtor asserted his rights as the basis for an adverse report of credit unworthiness. *Koenig v. Waukesha State Bank*, 2006 WL 2334841, at *7 (E.D. Wis. Aug. 10, 2006). Thus, if CitiMortgage were to make an adverse report to a credit bureau regarding Banaszak's credit worthiness based upon the fact that he applied for protection under the Act, then CitiMortgage would violate § 518. *Id*.

---

[6] "While a Court considering a motion under Rule 12(b)(6) usually must accept a plaintiff's allegations as true, 'it is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.'" *Moody v. CitiMortgage, Inc.*, 2014 WL 3501051, at *5 (W.D. Mich. July 14, 2014) (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*¸ 163 F.3d 449, 454 (7th Cir. 1998)).

In his complaint, Banaszak requests that "this Court prohibit[] the Defendant from making any adverse report relating to the creditworthiness of Plaintiff Banaszak to agencies engaged in the practice of assembling or evaluating consumer credit information . . . as a result of his exercise of his rights under the SCRA." Compl. ¶ 62. Banaszak did not, however, allege that CitiMortgage has attempted to make an adverse credit report; instead, Banaszak seeks protection in case CitiMortgage tries to file an adverse report in the future. Specifically, Banaszak "seeks a further order of this Court prohibiting the Defendant from making any adverse report relating to the creditworthiness of Plaintiff Banaszack" "in the event this Court grants the relief requested" with regard to Banaszack's other claims. Compl. ¶ 68. Indeed, Banaszak admits that he is seeking relief pursuant § 518 "simply as a matter of precluding the Defendants from adversely reacting." Obj. at 3.

Thus, Banaszack seeks an injunction directing CitiMortgage to comply with the law. But courts have repeatedly held that injunctions that simply require a defendant to "obey the law"—such as the one requested by Banaszak—are impermissible. *Equal Emp't Oppor. Comm'n v. Wooster Brush Co. Emps. Relief Ass'n*, 727 F.2d 566, 576 (6th Cir. 1984); *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240-41 (2d Cir. 2001); *Elend v. Basham*, 471 F.3d 1199, 1209-1210 (11th Cir. 2006). Therefore, because Banaszack is requesting relief in the form of an impermissible injunction requiring CitiMortgage to comply with the law in the future, he has not stated a claim under § 518 for which relief may be granted. Banaszak's objection will therefore be overruled.

**E**

Banaszak's final objection concerns the Magistrate Judge's recommendation that his fraud claim be dismissed. The Magistrate Judge concluded that Banaszack had not only failed to

meet the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), he had also failed to allege facts that could satisfy the elements of a fraud claim.

Pursuant to Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." The Sixth Circuit interprets "Rule 9(b) as requiring plaintiffs to allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud. *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 563 (6th Cir. 2003).

Under Michigan law, common-law fraud requires proof that:

(1) the defendant made a material representation;

(2) the representation was false;

(3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion;

(4) the defendant made the representation with the intention that the plaintiff would act upon it;

(5) the plaintiff acted in reliance upon it; and

(6) the plaintiff suffered damage.

*Cummin v. Robinson Twp.,* 770 N.W.2d 421, 435 (Mich. Ct. App. 2009).

In his complaint, Banaszak appears to argue that violations of specific provisions of the SRCA are grounds for fraud:

Defendant committed fraud and misrepresented their intentions/actions and deceived the Plaintiff Banaszak when Defendant:

A. Coerced Plaintiff Banaszak into executing two separate loan modifications as outlined in Exhibits 4 &7, above, which included a substantial higher principal amount due because of wrongfully assessing interest, late fees and penalties. 50 U.S.C. App. § 518.

> B. Adversely impacted Plaintiff Banaszak's creditworthiness to a reporting agency in the practice of assembling or evaluating consumer credit information. 50 U.S.C. App. § 518.[7]
>
> C. Failed and/or refused to properly compute Plaintiff Banaszak's period of military service. 50 U.S.C. App. § 526.
>
> D. Failed and/or refused to lower and continue to keep lowered the interest rate obligation under the terms of the Note and Mortgage. 50 U.S.C. App. § 527.
>
> E. Failed and/or refused to stay proceedings and/or adjust Plaintiff Banaszak's obligations under the note & mortgage so as to preserve Plaintiff Banaszak's interest in said obligation. 50 U.S.C. App. § 533.
>
> F. Failed and/or refused to pay/advance/maintain real property taxes in accordance with the Note & Mortgage, including initiating a non-judicial foreclosure sale during Plaintiff Banaszak's period of active duty. 50 U.S.C. App. § 561.
>
> G. Failed and/or refused to afford Plaintiff Banaszak the protections outlined in 50 U.S.C. App. § 591, including staying Plaintiff Banaszak's obligations under the promissory Note & Mortgage for the duration of Plaintiff BAnaszak's active military duty period.

Compl. ¶ 80. As is clear from the Court's reproduction of Plaintiff's allegations, each "fraud" allegation is in fact an alleged violation of the SRCA.

Indeed, this point is underscored by Banaszak's objection to the Magistrate Judge's report regarding the fraud claim: "Plaintiff objects to the Court's failure to recognize Defendant's violations of § 527." Obj. at 15. In other words, Banaszak is apparently arguing that if CitiMortgage violated § 527, it necessarily also engaged in common-law fraud.

But to the extent that Banaszak's complaint appears to argue that violations of the SCRA are fraud per se under Michigan law, this claim will be rejected. Banaszak has provided no

---

[7] This assertion directly contradicts Banaszak's previous assertions in the Complaint that CitiMortgage has not yet filed an adverse report with credit reporting agencies. Because Banaszak concedes in his briefs that no adverse report has been filed, the Court need not accept this allegation as true.

- 16 -

caselaw to support this proposition. And to the Court's knowledge, no Michigan court has concluded that the elements of common law fraud are met whenever the SCRA is violated.

Banaszak also explains in his objections that "[c]learly Citimortgage engaged in fraudulent conduct when it induced Captain Banaszak to execute a modification that was contrary to the Consent Decree/Court Order [in *United States v. Bank of America Corp. et al*] prohibiting Citimortgage from executing contracts as it did with Captain Banaszak."

Contrary to Banaszak's assertion, it is not "clear" that CitiMortgage engaged in fraudulent conduct. Banaszak refers to a consent decree apparently entered against CitiMortgage in a different proceeding—but he does not refer to any particular consent decree in the Complaint, does not provide a copy as an exhibit to the Complaint, and he does not provide a case citation. The Court, therefore, cannot determine what is being referred to.

But even assuming that the Consent Decree prohibits Citimortgage from "engag[ing] in a loan modification with a soldier in excess of 6% and [from] charg[ing] fees or costs associated with said modification, Banaszak still has not adequately pleaded a fraud claim under Michigan or federal law. Banaszak has not alleged that CitiMortgage made a false, material representation, nor has he alleged the time, place, and content of the misrepresentation. Nowhere in his complaint does Banaszack identify an alleged misrepresentation. Because an alleged misrepresentation is the foundation of a fraud claim under Michigan law, Banaszak has not stated a claim for fraud.

Finally, it is noteworthy that, even if Banaszak had adequately pleaded a claim for fraud, it would be precluded by the parties' contractual agreement memorialized in the mortgage note. Fraud claims, which sound in tort, are precluded by the rule that prevents pursuing a tort remedy when the parties' relationship is governed by a contract. *Sherman v. Sea Ray Boats, Inc.*, 649

N.W.2d 783 (Mich. Ct. App. 2002) ("Michigan case law expressly provides that an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established.").

Here, four of Banaszak's seven fraud claims arise out of his mortgage note. *See* Compl. ¶ 80 A (CitiMortgage coerced Banaszak into signing the mortgage note); D ("Failed . . . to lower and continue to keep lowered the interest rate obligation under the terms of the Note and Mortgage"); E ("Failed and/or refused to stay proceedings and/or adjust Plaintiff Banaszak's obligations under the note & mortgage"); F ("Failed and/or refused to pay/advance/maintain real property taxes in accordance with the Note & Mortgage"). Each of these allegations asserts a breach of the promissory note, and therefore Banaszak would be precluded from recovering in tort.

Banaszak has met neither the heightened pleading requirements for fraud required by the Federal Rules of Civil Procedure, nor the requirements to state a claim for fraud under Michigan law. Accordingly, his objection will be overruled and his fraud claims against CitiMortgage will be dismissed.

### F

In his objections, Banaszack requests permission to amend his complaint to allege a violation of § 561 for failure to pay insurance on his real property: "Plaintiff desires an opportunity to amend his Complaint to include this additional violation [of § 561] by Defendant." Obj. 12.

To begin, this Court's rules prohibit requesting specific relief from the Court as a part of a response to an opponent's motion or as objections to a Magistrate Judge's recommendation. *See* Motion Practice Guidelines for Judge Thomas L. Ludington, Separate Motion and Brief,

available at http://www.mied.uscourts.gov/Judges/guidelines/topic.cfm?topic_id=360 ("Motions may not be included within or appended to a response or a reply."). Accordingly, the portion of Banaszak's objections addressing amendment of his complaint will be disregarded.

### III

Accordingly, it is **ORDERED** that Plaintiff Banaszak's objections (ECF No. 44) are **SUSTAINED IN PART AND REJECTED IN PART**.

It is further **ORDERED** that the Magistrate Judge's Report & Recommendation (ECF No. 43) is **ADOPTED IN PART AND REJECTED IN PART**.

It is further **ORDERED** that Defendant CitiMortgage's Motion to Dismiss (ECF No. 20) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff Banaszak's claims pursuant to 50 U.S.C. App. § 561, 50 U.S.C. App. § 518, and for fraud are **DISMISSED WITH PREJUDICE**. To the extent that Banaszak seeks to recover damages related to emotional distress pursuant to § 527, this claim will be **DISMISSED WITH PREJUDICE**.

                                                  s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

Dated: September 10, 2014

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 10, 2014.

                    s/Tracy A. Jacobs
                    TRACY A. JACOBS