UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY BANASZAK,

        Plaintiff,                  Case No. 13-13710

v                                        Honorable Thomas L. Ludington

CITIMORTGAGE, et al.,

        Defendant.

_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION**

Plaintiff Anthony Banaszak initiated this case against Defendant CitiMortgage, alleging that it had violated several provisions of the Servicemembers Civil Relief Act, 50 U.S.C. §§ 501 *et seq.* ("SCRA") and had engaged in common-law fraud. The allegations relate to CitiMortgage's management of his residential mortgage loan while he was on active duty status.

On November 1, 2013, CitiMortgage filed a motion to dismiss Bansaszak's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion was referred to United States Magistrate Judge Charles Binder, who issued a report recommending that CitiMortgage's motion be granted and that Banaszak's complaint be dismissed. Banaszak timely filed objections to the Magistrate Judge's recommendation.

On September 10, 2014, this Court issued an order adopting in part and rejecting in part the Magistrate Judge's recommendation. The Court concluded that Banaszak had adequately pleaded a claim for violations of § 527 and § 591 of the SCRA. However, the Court dismissed Banaszak's other claims pursuant to Rule 12(b)(6).

On September 23, 2014, Banaszak timely filed a motion for reconsideration of this Court's September 10, 2014 Order. Because Banaszak is attempting to re-assert arguments already rejected by this Court in its previous Order, his motion for reconsideration will be denied.

**I**

Anthony Banaszak is a captain in the United States Armed Services. On November 11, 2003, Banszak executed a mortgage securing property located at 1031 South Lincoln Street, Bay City, Michigan.[1] Compl. ¶ 4. The promissory note reflected a 30-year loan with a fixed rate of interest at 6.875%. Compl. Ex. 1.

In September 2004, Banaszak was ordered to active duty from September 20004 through March 31, 2006, and Banaszak explains that active duty "materially affected" his ability to pay his mortgage. Compl. ¶ 5-7, Ex. 4. Because Banaszak was unable to comply with the terms of his mortgage, CitiMortgage prepared a Loan Modification Agreement in which Banaszak acknowledged that he had not paid certain interests, costs, and expenses as required by his mortgage agreement. Specifically, the 2006 Loan Modification Agreement noted that accrued interest, costs, and expenses in the amount of $27,219.82 had not been paid and would therefore be added to Banaszak's principal balance. The 2006 Loan Modification further stated that the annual interest rate would remain at 6.875%. *Id.*

In September 2007, Banaszak was once again called for active duty, and he remained on active duty until March 5, 2013. Compl. ¶¶ 11-12, 16, 20-22, 24. Banaszak claims that this period of active duty "materially affected" his ability to comply with his mortgage obligations. Therefore, while he was on active duty in 2008, he once again entered into a Loan Modification

---

[1] Union Federal Bank of Indianapolis issued the mortgage and subsequently assigned it to CitiMortgage. Compl. ¶ 44.

Agreement with CitiMortgage in which he acknowledged that certain interest, costs, and expenses had not been paid in accordance with the mortgage terms. Comp. ¶ 26. According to the 2008 Loan Modification Agreement, those accrued costs would be added to the principal balance, resulting in a new unpaid principal balance of $215,364.03. The September 2008 Loan Modification again confirmed that the annual interest rate was 6.875%. *Id.*

About one month later, in October 2008, CitiMortgage sent Banaszak a letter confirming that his interest rate had been lowered so as to comply with the SCRA: "According to your previoius notification and in accordance with the [SCRA], CitiMortgage, Inc. (CMI) adjusted the effective interest rate on your mortgage loan to 6.000%." Compl. Ex. 8 at 8. The letter further noted that his interest rate would revert back to 6.785% on October 1, 2008, given that "Banaszak has been released from active duty as of 09/01/07." *Id.*

When Banaszak returned from active duty in 2013, he discovered that the Bay County Treasurer had posted a foreclosure notice on his property for non-payment of property taxes. Compl. ¶ 30. As a result, Banaszak filed this lawsuit seeking damages and an injunction prohibiting the foreclosure.

**II**

A motion for reconsideration will be granted if the moving party shows: "(1) a palpable defect, (2) the defect misled the court and the parties, and (3) that correct the defect will result in a different disposition of the case." *Michigan Dept. of Treasury v. Michalec*, 181 F. Supp. 2d 731, 733-34 (E.D. Mich. 2002) (quoting E.D. Mich. LR 7.1(g)(3)). A "palpable defect" is "obvious, clear, unmistakeable, manifest, or plan." *Id.* at 734 (citing *Marketing Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 2d 262, 278 (E.D. Mich. 7.1 (h)(3)).

Banaszak moves for reconsideration on three claims: (1) the Court erroneously dismissed his claim for emotional damages pursuant to state law; (2) the Court erroneously dismissed his claim for violation of § 518; and (3) the Court erroneously dismissed his fraud claim.[2]

**A**

Banaszak first claims that this Court erred by concluding that he cannot recover emotional damages for violation of § 527. In its September 10, 2014 Order, the Court concluded that, pursuant to Michigan law, Banaszak could not recover emotional damages related to the alleged violation of § 527 because Michigan does not permit recovery of emotional damages related to breach of contract claims. Banaszak contends that this conclusion was in error because it is against the great weight of authority.

"Motions for rehearing or reconsideration which merely present the same issues ruled upon by the court, either expressly or by reasonable implication shall not be granted." E.D. Mich. LR 7.1(h)(3). A motion for reconsideration "is not properly used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier but were not." *Smith v. Mount Pleasant Schools*, 298 F. Supp. 2d 636, 637 (E.D. Mich. 2003) (citing *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 357, 374 (6th Cir. 1998)).

Here, Banaszak presents the same argument he made in his objection: that emotional damages are available for violations of § 527. The Court has already concluded that it does not, and therefore his request for reconsideration of this claim will be denied.

But even though the repetitiousness of the argument is sufficient to deny reconsideration, the Court will address the argument. Banaszak contends that the "great weight of authority" permits recovery of emotional damages for violations of § 527. But although Banaszak proffers

---

[2] As discussed below, Banaszak claims that his "fraud" claim was actually a claim for relief pursuant to § 533. The Court rejects this argument, and therefore will refer to it as a fraud claim.

several cases discussing the SCRA, he does not produce a single case holding that emotional damages are available for violations of § 527—let alone a "great weight" of authority.

Instead, the cases he proffers are either (1) inapplicable or (2) address whether punitive damages are available under various provisions of the SCRA. For example, Banaszak first relies on *Brewster*, in which the Ninth Circuit held that a plaintiff had stated a claim under § 533 by alleging that the defendant failed to remove improper foreclosure fees. *See Brester v. Sun Trust Mortgage, Inc., et al.*, No. 12-56560 (9th Cir. Feb. 7, 2014). Banaszak contends that *Brewster* "provides insightful interpretation of the remedies and damages permitted under the Act." Reconsideration at 11.

The Court disagrees. The *Brewster* court explicitly refused to address whether punitive damages—let alone emotional damages—were recoverable under SCRA § 533: "At this stage of the litigation, we need not and do not reach the question of whether punitive damages are available under this section of the SCRA." *Brewster*, No. 12-56560 at 5 n. 4. The Ninth Circuit's refusal to determine whether punitive damages are available (an issue not present in the instant case) under § 533 (a provision not at issue in the instant case) does not provide any guidance concerning whether emotional damages are available for violation of § 527.

Nor does the next case presented by Banaszak, *Wray v. CitiMortgage*, provide any guidance. The *Wray* court did not address what types of damages are available under § 527. *See* 3:12-3628 (D.S.C. June 26, 2013). Instead, the *Wray* court merely concluded that the plaintiff had sufficiently pleaded a violation of § 527. Wray does not discuss which types of damages are available for violations of § 527. Thus, *Wray* does not provide any support for the proposition that emotional damages are available under § 527.

Similarly, Banaszak's reliance on *Rowles v. Chase Home Finance, LLC*, is also misplaced. In *Rowles*, the district court approved a settlement in a class action lawsuit. 2012 WL 80570, at *1 (D.S.C. Jan. 10, 2012). *Rowles* does not reference § 527, punitive damages, or emotional damages, and thus it provides no guidance for this Court.

Finally, and most persuasively, Banaszak relies on *Hurley v. Deutsche Bank Trust Company Americas*, 2009 WL 701006 (W.D. Mich. March 13, 2009). In *Hurley*, the district court concluded that, absent any indication from Congress to the contrary, the SCRA must be liberally construed to permit punitive damages: "While the question is not free from doubt, this Court concludes that punitive damages may be recovered for SCRA violations." *Id*. at *10. Although the *Hurley* court addressed punitive damages, it did not address § 527 or emotional damages. Thus, while persuasive, *Hurley* is not determinative of the present question: are emotional damages recoverable under § 527?

In sum, not one of the four cases cited by Banaszak stands for the proposition that emotional damages are available for violations of § 527. Three of the four cases do not reference emotional damages or § 527, and the fourth addresses the availability of punitive damages. Thus, Banaszak has not shown that this Court's Setpember 10, 2014 Order was against the "great weight" of legal authority.

Indeed, the only case that appears to directly address whether emotional damages are available under § 527 concludes the opposite: that emotional damages are *not* available. In *Newton v. Bank of McKenney*, the plaintiff claimed that emotional damages "for the aggravation and anguish caused by the belief that they were accumulating interest at a rate higher than 6%" in violation of § 527. 2012 WL 1752407, at *8 (E.D. Va. May 16, 2012). The *Newton* court first

noted that "the SCRA effectively amends the contract between the parties . . . ." *Id.* (citing *Cathey v. First Republic Bank*, 2001 WL 3626034, at *6 (W.D. La. July 6, 2001)).

Having determined that the SCRA amended the contract between the parties, the *Newton* court determined that it "may only award contractual remedies for a breach of the amended contract" and then concluded that emotional damages are not recoverable for breach of contract. *Id.* at *8-9. In other words, the only court to explicitly address this question has determined that emotional damages are not recoverable for a violation of § 527.

Here, Banaszak concedes that the SCRA affects contractual rights:

> Admittedly, the SCRA is an unusual statute in that it affects prior legal agreements and, under the conditions set forth in the Act, varies the terms of written contracts and the normal methods of enforcement of obligations utilized by creditors.

Reconsideration 7. Following *Newton*'s precedent, the Court's September 10, 2014 Order then surveyed state law before determining that emotional damages are not recoverable for a breach of contract in Michigan.

Banaszak has not offered any support for his assertion that the Court erred in concluding that emotional damages are not recoverable for violation of § 527. Indeed, three of the four cases offered by Banaszak—*Brewster, Wray, and Rowles*—are not even applicable to the instant question. And although *Hurley*'s expansive reading of the SCRA concluded that punitive damages were available, it did not address whether emotional damages are available under § 527. Thus, Banaszak did not proffer any authority—let alone a "great weight of authority"—to support his argument that emotional damages are recoverable for violation of § 527.

In contrast, the only other court to address the question has firmly rejected the idea that emotional damages are recoverable. *See Newton*, 2012 WL 1752407, at *9 (E.D. Va. May 16, 2012). Thus, Banaszak has not shown that the Court's conclusion that emotional damages are

- 7 -

- 8 -

not recoverable under § 527 was in error or was against the great weight of authority. Accordingly, Banaszak's motion for reconsideration will be denied on this claim.

**B**

Banaszak next asserts that this Court erred when it determined that he had not adequately pleaded a claim for violation of § 518. In general, § 518 prohibits a creditor from making an adverse credit report simply because a plaintiff invoked the provisions of the SCRA. Banaszak claims that he properly pleaded a cause of action under § 518 because the 2006 and 2008 Loan Modifications negatively impacted his credit.

Here, Banaszak presents the same arguments he made in his objections: that he has adequately pleaded a cause of action under § 518. To support this repetitive argument, he now attempts to argue that the loan modifications effectively lowered his credit score, in violation of § 518.

Banaszak's motion for reconsideration on this claim will be denied. Most importantly, Banaszak is merely reasserting his original objection—that he adequately pleaded a cause of action under § 518. Banaszak has not identified a "palpable defect" in the Court's prior Order regarding this claim; instead, he disagrees with the Court's determination and seeks to argue another theory of violation. This repetitious argument is prohibited on motions for reconsideration, and this is sufficient grounds on which to deny the motion for reconsideration.

Alternatively, even if the Court were to consider Banaszak's reasserted argument, he still would not be entitled to relief. Banaszak claims that the two loan modifications caused him to suffer damage to his credit score, which would violate § 518.

It is noteworthy that this is the first occasion that Banaszak has presented this theory of a violation under § 518. Indeed, Banaszak did not assert this purported violation in his response to

CitiMortgage's Motion to Dismiss (ECF No. 32); nor in oral arguments in front of the Magistrate Judge (ECF No. 52); nor in his Objections to the Report and Recommendation (ECF No. 44); nor in his Reply to CitiMortgage's Response to his Objections (ECF No. 61). Thus, although Banaszak had at least four prior opportunities to present this theory, he did not do so.

"Absent a legitimate excuse, an argument raised for the first time in a motion for reconsideration at the district court generally will be forfeited." *In re Greektown Holdings, LLC*, 728 F.3d 567, 575 (6th Cir. 2013) (quoting *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 331-32 (6th Cir. 2009)). Banaszak has not presented a legitimate explanation for not advancing the argument in earlier proceedings. Therefore, Banaszak's motion for reconsideration of the denial of his § 518 claim will be denied.

Moreover, even examining Banaszak's new argument, he is not entitled to relief. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency. Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In its September 10, 2014 Order, the Court concluded that Banaszak was seeking prospective relief under § 518. The Court noted that Banaszak's Complaint states:

> [P]ursuant to the provisions of 50 U.S.C. App. § 518, Plaintiff Banaszak seeks a further order of this Court prohibiting the Defendant from making any adverse report relating to the creditworthiness of Plaintiff Banaszak to agencies engaged in the practice of assembling or evaluating consumer credit information (including, but not limited to Equifax, Trans Union and Experian) as a result of his exercise of his rights under the SCRA.

Compl. ¶ 62. Furthermore, in his objection to the Magistrate Judge's Report and Recommendation, Banaszak admitted that he is seeking prospective relief pursuant to § 518 "simply as matter of precluding the Defendants from adversely reacting." Obj. at 3.

In his motion for reconsideration, Banaszak contends that this Court erred when it concluded he was seeking only prospective relief. He now asserts that the loan modifications had a negative impact on his credit score, which he claims violates § 518. In other words, Banaszak claims that the harm is no longer just prosepective; instead, he did in fact suffer a violation when he entered into the loan modificatios.

Even assuming that the loan modifications improperly impacted his credit score in violation of § 518, Banaszak did not plead this in his complaint, and therefore he cannot survive a motion to dismiss the claim. In deciding whether a plaintiff sets forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *League of United Latin Am. Citizens*, 500 F.3d at 527 (citing *Twombly*, 550 U.S. at 555-56). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 129 S. Ct. at 1949. *See also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Furthermore, a court is not required to "create a claim

which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).

Here, Banaszak did not state a viable legal conclusion for violation of § 518. Instead, he sought prospective relief pursuant to § 518, which is not a viable legal claim. And the Court is not required to "create a claim" that Banaszak failed to plead. He does not allege any other violation of § 518 in his Complaint, much less factual allegations that would support a claim for violation of § 518. Accordingly, even considering Banaszak's new argument—that CitiMortgage violated § 518 by entering into loan modification agreements with him—Banaszak has not stated a claim pursuant as required by Fed. R. Ci. P. 12(b)(6).

C

Banaszak's motion for reconsideration of his Fraud claims face the same problems. In his motion, he makes the perplexing argument that this Court should not have interpreted the claim under the heading "SIXTH CAUSE OF ACTION FRAUD, MISREPRESENTATION AND DECEIT BY DEFENDANT, CITIMORTGAGE", *see* Compl. ¶ 75, as a fraud claim. Instead, he alleges that that claim should be interpreted as a claim for relief pursuant to § 533 of the SCRA.[3]

However, like his previous argument pursuant to § 518, this is the first time that Banaszak has made this argument. Indeed, in all the four prior opportunities to plead his case, Banasak argued that he had adequately pleaded a fraud claim pursuant to Michigan law. *See* Response at iv ("Plaintiff's Fraud Claim is Pled in Accordance with Michigan Law And with the Particularity Required by Federal Rule of Civil Procedure 9(B)"); Transcript at 21 (Banaszak's counsel referring to his "fraud count"); and Obj. at 15 (referring to Banaszak's "Fraud" claim).

---

[3] In general, § 533 prohibits the sale, foreclosure, or seizure of property during or within one year after a servicemember's military service. 50 U.S.C. § 533(c).

- 11 -

Banaszak is once again attempting to present a new theory—that his "fraud" claim was actually a request for relief pursuant to § 533—that he did not previously present. He has not presented a legitimate excuse for why he did not present this argument earlier in the proceedings, despite having four opportunities to do so. *See Greektown*, 728 F.3d at 575. And because motions under Local Rule 7.1(h) "are aimed at reconsideration, not initial consideration," his motion for reconsideration of this claim will be denied. *Gowens v. Tidwell*, 2012 WL 4475352, at *2 (E.D. Mich. Sept. 27, 2012) (citing *F.D.I.C. v. World University Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)).

Moreover, even considering this new argument, the Court concludes that Banaszak does not adequately plead a claim for violation of § 533. Banaszak's complaint, in relevant part, provides:

> Plaintiff Banaszak relied to his detriment on Defendant's implied and expressed representations that they would comply with the laws of the United States of America and afford Defendant[sic] the protections under the Servicemembers' Civil Relief Act, including 50 U.S.C. App. § 501-597b.
>
> Defendant *committed fraud and misrepresented their intentions/actions and deceived* the Plaintiff Banaszak when Defendant . . .
>
> (E) Failed and/or refused to stay proceedings and/or adjust Plaintiff Banaszak's obligations under the note & mortgage so as to preserve Plaintiff Banaszak's interest in said obligation. 50 U.S.C. App. § 533.

Compl. ¶ 79, 80(E) (emphasis added). By the terms of his complaint, Banaszak is asserting that CitiMortgage committed fraud by violating § 533 of the SCRA. The complaint does not assert violation of § 533 as an independent cause of action; rather, Banaszak alleges that it is the underlying fraudulent activity.[4] And as noted in this Court's September 10, 2014 Order,

---

[4] In his motion for recommendation, Banaszak notes that "[t]he basis for Plaintiff's claims under this count flow from and are the direct result of the Defendant's violations of the SCRA. The title of the count is therefore misleading." Reconsideration at 21. The Court disagrees, and finds that the title "Fraud, Misrepresentation and Deceit by Defendant" accurately characterizes Banaszak's attempt to plead a claim for fraud.

violations of the SCRA are not fraud per se. Accordingly, Banaszak's fraud claim does not survive CitiMortgage's motion to dismiss.

### III

Accordingly, it is **ORDERED** that Plaintiff Banaszak's Motion for Reconsideration (ECF No. 63) is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: October 1, 2014

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 1, 2014.

s/Tracy A. Jacobs
TRACY A. JACOBS

---