UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY J. BANASZAK,

                        Plaintiff,                       Case No. 13-cv-13710

v                                              Honorable Thomas L. Ludington
                                              Magistrate Judge Patricia T. Morris
CITIMORTGAGE, INC.,

                        Defendant.

_____/

**OPINION AND ORDER SUSTAINING IN PART AND OVERRULING IN PART
DEFENDANT'S OBJECTIONS, OVERRULING PLAINTIFF'S OBJECTIONS,
ADOPTING IN PART AND REJECTING IN PART THE REPORT AND
RECOMMENDATION, AND SCHEDULING EVIDENTIARY HEARING**

Plaintiff Anthony J. Banaszak initiated this case by filing his 10-count complaint on August 29, 2013. Complaint, ECF No. 1. Plaintiff alleged that Defendants CitiMortgage, Inc., Bay County Treasurer, Chase Auto Finance Corporation, Springleaf Financial Services Inc., and JPMorgan Chase Bank violated his rights by mismanaging various loans while he was on active duty status. ECF No. 1. For various reasons all Defendants except for CitiMortgage have been dismissed from this action.

In his complaint, Plaintiff alleged four counts against CitiMortgage arising from its alleged mismanagement of Plaintiff's residential mortgage loan: (1) Violation of the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 527, which provides that obligations incurred by the service member before entering military service may not bear an interest rate greater than 6% during the period of military service and, in some cases, for a year after discharge from the military; (2) Violation of SCRA § 518, providing that service member's claim for SCRA protection shall not itself provide the basis for an adverse credit report, § 527,

and § 591, which permits a service member to apply for relief from collection of debts; (3) violation of SCRA § 561's prohibition against foreclosure of a service member's real estate for the purpose of collecting tax or other assessments; and (4) Fraudulent misrepresentation.

On November 1, 2013, Defendant CitiMortgage filed a motion to dismiss Plaintiff complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion was referred to United States Magistrate Judge Charles Binder, who issued a report on April 10, 2014, recommending that CitiMortgage's motion be granted and that Plaintiff's complaint be dismissed. ECF No. 43. On September 10, 2014, this Court issued an order sustaining in part Plaintiff's objections and adopting in part the report and recommendation. ECF No. 62. Plaintiff's claims under §§ 561 and 518 were dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), as was his claim of fraudulent misrepresentation. His claims under SCRA §§ 527 and 591 survived. ECF No. 62.

After the close of an extended discovery period, on October 28, 2015 Defendant CitiMortgage moved for summary judgment. *See* Mot. Summ. J., ECF No. 81. On July 14, 2016 United State Magistrate Judge Patricia T. Morris issued a report and recommendation, recommending granting in part and denying in part Defendant's motion for summary judgment. Both parties have timely filed objections to the report. For the reasons stated below, Plaintiff's objections will be overruled, Defendant's objections will be sustained in part, the report and recommendation will be adopted in part, and an evidentiary hearing scheduled. Defendant's motion for summary judgment will not be ruled on until after the evidentiary hearing.

**I.**

Plaintiff Anthony Banaszak is a captain in the United States Armed Services. On November 11, 2003, Banaszak executed a $156,543.00 mortgage securing property located at

1031 South Lincoln Street, Bay City, Michigan. *See* Mortgage Pg ID 1057, Mot. Summ J. Ex. C. The security interest in the mortgage was originally held by Union Federal Bank of Indianapolis. *Id*. Through the accompanying promissory note Banaszak agreed to a 30-year loan with a fixed rate of interest at 6.875%. *Id*. at pg ID 1067. Banaszak agreed to make a payment of principal and interest, in the total amount of $1,028.38, on the first day of each month beginning on January 1, 2004. *Id*. Banascak further agreed that late payments could result in penalties or acceleration of his remaining obligations. Effective January 1, 2004 Plaintiff Banaszak's mortgage loan servicing, and the right to collect mortgage loan payments, was transferred from Union Federal to Waterfield Mortgage Company, Incorporated ("Waterfield").

### A.

In September 2004, Banaszak was ordered to active duty from September 2004 through September 27, 2006. Banaszak claims that active duty "materially affected" his ability to pay his mortgage. *See* Compl. ¶ 5-7, Ex. 4. This claim is based on an allegation that active duty required him to leave a job with General Motors Company that paid him a six figure salary, and accept a reduction in income. *See* Pl.'s Resp. Summ J 1, ECF No. 87. Despite being granted extensive time for discovery in this matter, Banaszak has not provided the Court with any documents or testimony in support of this claim.

On or around May 1, 2006, while Banaszak was on active duty, Defendant CitiMortgage acquired the rights on Plaintiff's loan account from Waterfield. *See* Fogle Dec. ¶ 4. At that time, Plaintiff's loan obligations had been paid through February 1, 2005. *Id*. at ¶ 6. Plaintiff Banaszak made one payment on May 16, 2006. *See* Payment schedule, ECF No. 84 Pg. ID 1373. At that time, CitiMortgage had not received notice that Banaszak was on active duty, and so applied the 6.875% interest rate to the payment. However, upon receiving Banaszak's active

duty orders on June 20, 2006, CitiMortgage retroactively compensated Banaszak by applying the interest paid in excess of 6.000% to Banaszak's unapplied funds, which came out to $112.75 in repaid interest. *See* Fogle Dec. ¶¶ 9, 10; *Id*. at Ex. 2.

In anticipation that Banaszak would continue to make payments during his four remaining months on active duty, Defendant credited an additional $112.75 per month to Plaintiff's unapplied funds for a total of $451.00 to ensure that Plaintiff did not pay interest over 6.000%. However, after Plaintiff failed to make his June, July, August, or September monthly payments, Defendant reversed the application of the $451.00 to Plaintiff's unapplied credit on October 12, 2006. *See* Fogle Dec. ¶ 13.

Plaintiff Banaszak returned from active duty on September 27, 2006. Thereafter, on October 3, 2016 Banaszak entered into a loan modification agreement with Defendant CitiMortgage (the "2006 Loan Modification"). *See* ECF No. 1-6. Through the agreement, Banaszak acknowledged that he had not paid certain interests, costs, and expenses in the amount of $27,219.82 ($16,816.71 in delinquent interest and $10,403.11 in delinquent escrow), and agreed that that amount would therefore be added to his principal balance, resulting in a new principal balance of $181,708.91. *Id.* This amount included the $451.00 CitiMortgage had initially credited under the SCRA to reduce Banaszak's interest payments to 6.000%, but then reversed after Banszak did not make the June, July, August, or September payments. The 2006 Loan Modification further stated that the annual interest rate would remain at 6.875%. *Id*.

Plaintiff Banaszak made a single payment under the 2006 Loan Modification on October 24, 2006. *See* ECF No. 84 Pg. ID 1374. In 2006 the SCRA only provided for interest rate protection during active military duty. The SCRA was amended on July 30, 2008 to extend SCRA interest rate protection for one full year after the end of a servicemember's active duty

("grace period"). Because Banaszak was not on active duty at that time, and because the SCRA had not yet been amended to provide grace period protection, Banaszak's payment was not subject to the SCRA 6.000% rate protection. After his July payment, Banaszak then failed to make a payment for almost two years, even though he concedes he had returned to his job at General Motors. *See* Pl.'s Resp. Summ. J. 2. Defendant CitiMortgage then sent Banaszak a letter on April 24, 2007 stating that it would begin foreclosure proceedings. *See id.* at Ex. 2. For one reason or another, the foreclosure proceedings did not go forward.

In May 2007, in anticipation of two monthly payments never made by Banaszak, CitiMortgage credited Banaszak's loan mortgage account for interest that would have been in excess of 6.000% had Banaszak paid, or $262.70. *See* Fogle Dec. ¶ 16. It is unclear why CitiMortgage applied this credit, as Banaszak was not on active duty at the time. While Banaszak did not in fact make those payments, Defendant CitiMortgage did not reverse the credit.

In September 2007, Banaszak was once again called for active duty. *See* Compl. Ex. 4. He was initially called for 365 days, but his duty was later extended until March 5, 2013. Compl. ¶¶ 11-12, 16, 20-22, 24. Basnaszak claims that this period of active duty "materially affected" his ability to comply with his mortgage obligations. Again, however, Banaszak has not provided the Court with any documents or testimony in support of this claim. He did not provide Defendant CitiMortgage with notice of his active duty until he returned in 2013.

Defendant CitiMortgage allegedly referred Plaintiff Banaszak's loan to foreclosure on two separate occasions in 2008, but never completed foreclosure proceedings. It is undisputed that Banaszak had not yet provided Defendant with notice of his active duty at the time of these actions.

- 5 -

After failing to make a payment for almost two years, while on active duty in September of 2008 Banaszak once again entered into a Loan Modification Agreement with CitiMortgage (the "2008 Loan Modification"). Through the 2008 Loan Modification, Banaszak again acknowledged that certain interest, costs, and expenses had not been paid in accordance with the mortgage terms, and agreed that those accrued costs, totaling $35,224.26, would be added to the principal balance, resulting in a new unpaid principal balance of $215,364.03. This included unpaid interest Banaszak had accrued at a rate of 6.875% despite the fact that he was on active duty at the time of the accrual. At this time Banaszak had not actually made any loan payments since being called to active duty. The September 2008 Loan Modification again confirmed that the annual interest rate was 6.875%. *Id.*

Following the 2008 Loan Modification, Banaszak made payments on October 9, 2008, November 13, 2008, February 2, 2009, March 1, 2009, and April 2, 2009. *See* Payment Schedule, Fogle Dec. Ex. 2, Pg. ID 1375. Plaintiff does not contest Defendant's allegation that CitiMortgage's Special Loans Division did not receive Banaszak's military orders until on or about April 30, 2013. *See* Fogle Dec. Ex. 9. Accordingly, Banaszak initially paid 6.875% interest on all five of his payments. Upon receiving Banaszak's military orders covering the period from July 25, 2007 to September 29, 2012, Defendant CitiMortgage retroactively reduced Banaszak's interest rate to 6.000% by sending him a $1,347.35 refund check on or about August 2, 2013. *See* Fogle Dec. ¶ 23; *Id.* at Ex. 10. This check accounted for the $261.85 interest overpayment for each of the five payments. Defendant alleges that it did not receive notice that Banaszak's active duty had been extended until March 5, 2013 until Plaintiff Banaszak filed the present action. *See* Fogle Dec. ¶ 24.

**B.**

- 6 -

In response to these events, Banaszak filed this lawsuit seeking damages and an injunction prohibiting the foreclosure on August 29, 2013.  The lawsuit originally included five Defendants, however all but CitiMortgage have since been dismissed.  As of this Court's order granting in part CitiMortgage's motion to dismiss on September 10, 2014, only Banaszak's claims against CitiMortgage under SCRA §§ 527 and 591 survive.

The original scheduling order in this action was issued on November 26, 2014. ECF No. 73.  Under that order, discovery closed on April 24, 2015 and dispositive motions were due by May 25, 2015.  On February 12, 2015 the discovery and dispositive motion deadlines were extended to September 14, 2015 and October 28, 2015 respectively.  ECF No. 74.  The amended scheduling order also held that motions to join parties and amend pleadings were due by March 27, 2015.

On October 21, 2015, over a month after the close of discovery and almost seven months after motions to amend pleadings and join parties were due, Banaszak filed a motion to extend the scheduling order and amend his complaint. Through that motion Banaszak sought an extension in order to conduct additional discovery and depose Defendants' agents, employees, and/or representatives, as well as other undisclosed witnesses and experts, and add claims on behalf of a putative class, join Huntington National Bank as a new Defendant, and add multiple new claims, including violations of SCRA §§ 518, 531, 532 and 533, the Consent Decree in the National Mortgage Settlement, Michigan's Consumer Protection Act and Truth and Lending Act. ECF No. 78. Given the age of the case and Banaszak's undue delay in seeking the requested relief, that motion was denied.  *See* ECF Nos. 94, 98.

**II.**

- 7 -

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a Magistrate Judge's report and recommendation. See Fed. R. Civ. P. 72(b)(2). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted). If objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). De novo review requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the basis of a Magistrate Judge's report and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the magistrate judge. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002).

Plaintiff and Defendant have each filed objections to the magistrate judge's report. Because the objections are comprehensive, the parties' summary judgment papers will be reviewed de novo.

### III.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to

defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (internal quotations omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a [fact-finder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251-52.

Defendant first objects that while the magistrate judge articulated the correct standard of review, she applied the wrong standard, giving too much deference to Plaintiff's unsupported allegations. Despite the extended discovery period afforded to the parties, and while Defendant CitiMortgage has engaged in extensive document production, Plaintiff has produced minimal discovery in this matter.  He has not even produced his own deposition or affidavit, much less any depositions or affidavits of Defendant.  As noted by the magistrate judge, the level of scrutiny that must be applied to Plaintiff's allegations is complicated by the fact that § 591 appears to require an evidentiary hearing.  However, because Plaintiff still has the burden of presenting evidentiary support for his claims at the summary judgment stage, Defendant's objection in this regard will be sustained in part, and its motion for summary judgment will not be denied at this time.  Instead, the Court will defer ruling on Defendant's motion until after the evidentiary hearing.

**IV.**

The Servicemembers Civil Relief Act was passed "to enable [servicemembers] to devote their entire energy to the defense needs of the Nation." 50 U.S.C. App. § 502(1). It accomplishes this purpose by imposing limitations on judicial proceedings that could take place while a member of the armed forces is on active duty, including loans, contract enforcement, and other civil actions. 50 U.S.C. App. § 501 *et seq*. These limitations are "always to be liberally construed

to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." *Boone v. Lightner*, 319 U.S. 561, 575 (1943). Plaintiff Banaszak's remaining claims fall under two provisions of the SCRA.

The original version of the SCRA was passed during World War I. *See Gordon v. Pete's Auto Serv. of Denbigh, Inc.*, 637 F.3d 454, 457 (4th Cir. 2011).  Following the SCRA's reenactment in 1940, it has been revised and expanded numerous times between 1942 and 2003. *Id.*  Despite this long history, there is little precedent interpreting the act, particularly interpreting §§ 527 and 591.  This Court's opinion is therefore guided by the plain language of the statute and the few, mostly unpublished, cases in existence.

### A.

Banaszak's first claims falls under § 527, which provides that obligations incurred by the servicemember before entering military service may not bear an interest rate greater than 6% during the period of military service and, in some cases, for a year after discharge from the military. *Id.* at § 527(a)(1)(A).  Any interest charged over the 6% interest rate must be forgiven. *Id.* at § 527(a)(2). Once the servicemember provides written notice and a copy of the orders calling the servicemember into active duty to the creditor, the interest rate ceiling applies retroactively and is "effective as of the date on which the servicemember is called to military service." *Id.* at § 527(b)(2).  However, "[a] court may grant a creditor relief from the limitations of [§ 527] if, in the opinion of the court, the ability of the servicemember to pay interest upon the obligation or liability at a rate in excess of 6 percent per year is not materially affected by reason of the servicemember's military service." *Id.* at § 527(c).

Plaintiff Banaszak had made no additional mortgage payments since April 2, 2009.  Thus, for the nine years that Defendant CitiMortgage has been servicing Banaszak's mortgage loan,

Banaszak has made only seven payments, six of which are subject to SCRA interest rate protection. Defendant contends that Banaszak has not shown that he ever paid greater than 6.000% while he was on active duty. Specifically, Defendant contends that while a 6.000% interest rate would have resulted in interest payments of $6,147.23, Plaintiff only paid $6,071.32 in interest payments. Banaszak concedes that he never paid an interest rate of greater than 6.000%, but argues that Defendant violated § 527 by *charging* an interest rate of greater than 6.000% and then rolling that unpaid interest into his loan modifications, resulting in $51,409.81 in overcharged interest. He also argues that Defendant violated § 527 by including wrongfully charged late fees, delinquent escrow, expenses, and foreclosure fees that accrued during his active military duty in his loan modifications.

**i.**

The present case is complicated by Banaszak's missed payments. While CitiMortgage retroactively reduced the interest rate for the six SCRA-protected payments that Banaszak made, it did not retroactively reduce the interest rates for the 78 SCRA-protected payments that Banaszak *did not* make. Importantly, 17 of these missed SCRA-protected payments were then rolled into Banaszak's 2006 and 2008 Loan Modifications. The threshold question, then, is whether Banaszak is entitled to SCRA interest rate protection under § 527 for missed payments. This question is particularly relevant in cases such as the present one, where a servicemember does not inform a lender of his or her active duty until after the fact, requiring a retroactive reduction in the applicable interest rate. Must a lender retroactively reduce the interest rate for missed payments, or only for payments actually made? This Court already found that Plaintiff had stated a violation of § 527 by alleging that Defendant CitiMortgage charged an interest rate

of greater than 6.000% for Banaszak's unpaid loan payments and then rolled that unpaid interest along with late fees into Banaszak's loan modifications. *See* Op. & Order, ECF No. 62.

In *Newton v. Bank of McKenney*, 2012 WL 1752407 (E.D. Va., May 16, 2012), the plaintiff servicemember, Mrs. Newton had incurred loan obligation for herself and for her business prior to her assignment to active duty. Two days after receiving her assignment, she informed the bank that she would be on active duty and requested the interest rate protection of § 527. The bank complied in part, and reduced the interest rate for her personal obligations to 6.000%. The bank initially waivered on certain business-related note obligations, but ultimately retroactively credited interest incurred in excess of 6.000%, thus making it as if the interest were never charged. *Id*. at *3. The defendant bank maintained the interest rate at 6.000% despite the fact that Mrs. Newton did not make any payment for five years. *Id*. *Newton* is easily distinguishable from the present case, where Defendant declined to reduce the interest rate for Banaszak's missed payments.

Defendant's conduct goes against the plain language of § 527, which states in plain language that "[a]n obligation or liability bearing interest at a rate in excess of 6 percent per year that is incurred by a servicemember… before the servicemember enters military service shall not bear interest at a rate in excess of 6 percent" and that "[i]nterest at a rate in excess of 6 percent per year that would otherwise be incurred but for the prohibition in paragraph (1) is forgiven." *See* § 527(a)(1)-(2). By refusing to retroactively lower the interest rate for Banaszak's unpaid SCRA-protected payments, Defendant wrongfully allowed Banaszak to *incur* interest at a rate in excess of 6.000%.

**ii.**

If CitiMortgage had retroactively reduced the interest rate of Banaszak's first four missed payments, the 2006 Loan Modification would have increased his principal balance $451.00 less than it did – or $26,768.82 instead of $27,219.82. This had the effect of increasing his new principal balance to $181,708.91 instead of to $181,257.91. The 6.000% interest rate applied to the single payment Banaszak made on the 2006 Loan Modification (in October of 2006) was thus calculated in part based on the $451.00.  As a result, Plaintiff's 2006 October payment was $3.08 greater than it would have been without the excess interest.  *See* Mot. Summ. J. Ex. A at Ex. 5.  This *de minimus* increase was compounded through Plaintiff Banaszak's 2008 Loan Modification, which rolled 13 additional missed SCRA-protected payments, which accrued interest at 6.875%, into Banszak's principal balance. Defendant calculates that through his five post-2008 Loan Modification payments, Plaintiff paid $58.45 more than he would have without the excess interest. Defendant contends that this possible $61.53 overpayment is immaterial since, even including the $61.53 in his interest calculations, Banaszak only paid $6,132.85, whereas a 6.000% interest rate would have resulted in payments totaling $6,147.23. Plaintiff Banaszak does not contest any of this math.

Plaintiff also alleges that his Loan Modifications improperly included taxes, insurance, property inspection fees, loan modification fees, title insurance fees, and foreclosure related fees. As an aside, Defendant points out in its objection that Plaintiff has incorrectly asserted that modification fees, title fees, and borrower cash contribution fees were rolled into his principal balance.  Instead, the $27,219.18 added to his principal as a result of the 2006 Loan Modification was compromised of $16,816.71 in delinquent interest and $10,403.11 in delinquent escrow payments. Similarly the $35,224.26 added to his principal as a result of the 2008 Loan

Modification was compromised of $22,705.10 in delinquent interest, $11,215.66 in delinquent escrow payments, and $1,303.50 in foreclosure related expenses.

With the exception of the interest charged above 6.000%, Banszak has presented no evidence that any of these fees (i.e. taxes, insurance, escrow, and foreclosure related fees) resulted from the unprotected interest rates, or that the fees were otherwise wrongful under § 527. The mere fact that Plaintiff entered into loan modifications and that his monthly payments consequently increased does not itself prove a violation of § 527. Because the SCRA does not release Plaintiff from his duties under his mortgage contract – only places limits on those obligations – Plaintiff bears the burden of proving that his payments increased because of his military service and as a result of *some wrongful act* under the SCRA. Plaintiff's assertion that Defendant violated § 527 by forcing him into the Loan Modifications against his wishes is wholly unsupported by the evidence, and Plaintiff has presented no theory as to how a loan modifications are forbidden under the § 527. To the extent Plaintiff argues that Defendant's conduct violated § 523 of the SCRA his argument will be disregarded, as Plaintiff has not asserted any § 523 claim against Defendant in this action.

As Defendant notes, Banaszak's mortgage was first referred to foreclosure proceedings in 2007 when he was not on active duty, and he has not produced any evidence suggesting that those expenses incurred while he was on active duty. Plaintiff repeatedly argues that Defendant acted wrongfully by referring him to foreclosure in 2008 and informing the Treasurer's office and insurance company that his home was vacant. However, it is undisputed that at the time of those acts Plaintiff had not yet informed Defendant that he was on active duty, and thus Defendant was not aware that the SCRA protections applied. More importantly, Plaintiff has presented no evidence that the tax, insurance, or escrow fees were incurred while he was on

- 14 -

active duty or that their accrual was the result of Defendant's failure to comply with the SCRA interest rate protection of § 527, and not the result of his own missed payments. For these reasons the report and recommendation will be rejected in part.

### iii.

As indicated in this Court's previous order, the SCRA is not a strict liability statute, and so a plaintiff cannot recover under § 527 unless he demonstrates that he actually overpaid. *See, e.g.*, *Newton*, 2012 WL 1752407, at *9, ("Ordinarily the appropriate remedy [for allegations of overcharging] would be damages in the amount of the overcharge."); *Frazier v. HSBC Mortg. Servs.,* 401 F. App'x (11th Cir. 2010) (affirming summary judgment for defendant where, despite the fact that plaintiff's account statements included two different annual percentage rates, plaintiff admitted that "since she was called to active duty, she has never actually paid HSBC more than 6% interest on her loan, even for the few months when she was allegedly charged interest rates in excess of 6%); *Koenig v. Waukesha State Bank*, 2006 WL 2334841, at *4 (E.D. Wis. Aug. 10, 2006) (rejecting plaintiff's SCRA claim  under § 527 because plaintiff never actually paid more than 6% interest).  Because Plaintiff only made six SCRA-protected payments, and because he has not shown that he yet paid greater than 6.000% even taking into account the overcharged interest, he has failed to show a current violation of § 527 based on those interest payments.

Plaintiff repeatedly argues that this Court should grant him the relief that the settlement class received in *Wray v. CitiMortgage*, 3:12-3628 (D.S.C. June 26, 2013).  In *Wray* the district court found that the plaintiffs had stated a § 527 claim against the defendant, CitiMortgage, based upon an allegation that, in retroactively reducing the plaintiffs' interest rates to 6.000%, CitiMortgage had not properly reamortized the loans and as a result the plaintiffs paid less

- 15 -

principal than they were legally entitled. *Id*. at *3. As already explained by this Court, the *Wray* court did not address what types of damages are available under § 527, but merely concluded that the plaintiff had sufficiently pleaded a violation of § 527. *See* Order Den. Mot. Recons., ECF No. 65. Furthermore, the class in *Wray* pleaded claims that Plaintiff did not timely plead in this action. *See* Op. & Order Overruling Objections, ECF No. 98. Plaintiff was not a class member in *Wray*, and the relief obtained by the *Wray* class is not binding in the present action. The fact that Plaintiff may obtain different relief than the relief obtained by the class in *Wray* does not present a problem of inconsistent obligations such as would create a concern under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 19. Nonetheless, if at the evidentiary hearing Plaintiff shows an entitlement to relief under § 591, *Wray* may be taken into account in restructuring his loan.

Plaintiff also argues that while his overcharge to date may be nominal, without Court intervention he will be forced to pay for Defendant's SCRA violations over the course of the loan. This argument is related to Banaszak's second remaining claim under § 591.

**B.**

Section 591 provides that "[a] servicemember may, during military service or within 180 days of termination of or release from military service, apply to a court for relief … from an obligation or liability incurred by the servicemember before the servicemember's military service". § 591(a)(1). In the case of mortgages, "the court may, if the ability of the servicemember to comply with the terms of such obligation or liability…has been materially affected by reason of military service, after appropriate notice and hearing," grant a stay of the enforcement of the obligation. § 591(b).

Through his § 591 claim, Plaintiff Banaszak seeks a stay of his mortgage from July 25, 2007 through the duration of his active duty and the reinstatement of his principal loan balance as of February 1, 2005 of $154,773.28. *See* Compl. ¶ 61. Because § 591 does not entitle a plaintiff to avoid the requirement that he make equal periodic payments while on active duty, Plaintiff's request for a stay exceeds the relief he may seek under § 591. *See Koenig v. Waukesha State Bank*, 2006 WL 2334841 (E.D. Wis. Aug 10, 2006).

Plaintiff Banaszak also asks the Court to restructure his debt and reduce his total obligation by applying 6.000% interest rate to his time on active duty and a 0.000% interest rate to the pendency of this lawsuit. While this is appropriate relief under § 591, Plaintiff is only entitled to this relief if he can demonstrate that his ability to comply with his mortgage obligations had been materially affected by reason of military service. § 591(b).

So far, Plaintiff has introduced no evidence to support such a finding and continues to rest on unsupported allegations of financial hardship. Normally, at the summary judgment stage this would be fatal to Plaintiff's claims. However, because the SCRA must be construed liberally to protect servicemembers, and because the plain text of § 591(b) expressly contemplates an evidentiary hearing, Plaintiff will be given one final opportunity to provide evidence in support of his claims that active duty military service materially affected his ability to comply with his mortgage obligations. For this reason the report and recommendation will be adopted in part, and an evidentiary hearing will be scheduled. The Court will issue a final ruling on Defendant's summary judgment motion following the hearing

**V.**

Accordingly, it is **ORDERED** that Plaintiff Banaszak's objections, ECF No. 95, are **OVERRULED**.

- 17 -

It is further **ORDERED** that Defendant's objections, ECF No. 102, are **SUSTAINED IN PART AND OVERRULED IN PART**.

It is further **ORDERED** that the report and recommendation, ECF No. 100, is **ADOPTED IN PART AND REJECTED IN PART**.

It is further **ORDERED** that an evidentiary hearing pursuant to § 591 is **SCHEDULED** for **October 24, 2016 at 2:00 p.m.**  Defendant's motion for summary judgment will be decided following the hearing.

It is further **ORDERED** that Plaintiff Banaszak is **DIRECTED** to submit a supplemental brief **on or before September 28, 2016** setting forth the evidence and testimony he intends to submit at the hearing.  Defendant is **DIRECTED** to file a response, stating any concurrence in or objection to the proposed evidence, **on or before October 13, 2016.**

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 14, 2016

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 14, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager

- 18 -